# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

AMANJOT SINGH,

           Petitioner,

    v.

WARDEN OF THE DESERT VIEW FACILITY, et al.,

           Respondents.

Case No. 5:26-cv-02931-MBK

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Amanjot Singh, a native and citizen of India, is currently in the custody of the Department of Homeland Security ("DHS") at the Desert View Annex. Mr. Singh fled India and entered the United States without inspection on or about September 16, 2022. Shortly thereafter, Customs and Boarder Patrol ("CBP") agents apprehended Petitioner and released him on his own recognizance. Since that time, Petitioner has applied for asylum, obtained a work permit, and been gainfully employed. Petitioner has

remained in compliance with his supervision conditions and has no criminal history in the United States.

On May 25, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Petitioner when he returned home from work. The officers did not explain why Petitioner was being arrested or provide him an opportunity to explain why he should not be detained. The officers transported Petitioner to an ICE office and later transferred him to the Desert View Annex in Adelanto, California, where he remains today.

In this habeas action, Petitioner challenges his re-detention and on-going confinement under the Due Process Clause, the Immigration and Nationality Act, the Administrative Procedure Act, and the Fourth Amendment. He requests that the Court order his immediate release. Respondents filed an Answer in which they state they "are not presenting an opposition argument." Dkt. 7 at 2. In light of Respondents' non-opposition, the Court finds that Petitioner's sudden re-detention—without any materially changed circumstances or a meaningful pre-deprivation process—violates due process. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing where the Government must show material changed circumstances justifying Petitioner's detention.

## I.   FACTS AND PROCEDURAL HISTORY

Petitioner Amanjot Singh is a native and citizen of India. Dkt. 1 at 5. On or about September 16, 2022, Petitioner entered the United States without inspection. *Id.* Shortly thereafter, DHS apprehended Petitioner, briefly detained him pursuant to a Warrant for Arrest of Alien (Form I-200), and then released him on his own recognizance. *Id.* Petitioner was not enrolled in

an Alternatives to Detention program or subject to regular reporting requirements. *Id.*

Since his release, Petitioner has remained continuously in the United States. Petitioner filed an asylum application with United States Citizenship and Immigration Services ("USCIS"), which remains pending. *Id.* at 6. In connection with that proceeding, Petitioner was issued a work permit. *Id.* During his time in the United States, Petitioner has developed substantial family and community ties and maintained employment. *Id.* at 5-6. He has not violated any conditions of supervision or had any criminal arrests or convictions. *Id.*

On May 25, 2026, Petitioner returned home after a full day of work. After parking in his designated parking place at his apartment complex, Petitioner was approached by ICE officers who requested his identification. *Id.* at 6. Petitioner cooperated and provided his identity documents. *Id.* After learning that Petitioner had a pending asylum application, the ICE officers stated that he needed to accompany them to an ICE office for additional checks. *Id.* Petitioner asked for an explanation for why he was being detained, but none was provided. *Id.* At the ICE office, Petitioner explained that he had a pending asylum application and had complied with all requirements imposed on him by DHS. *Id.* The ICE officers nonetheless detained Petitioner without providing any explanation for why they were doing so. *Id.* at 7.

That same day, DHS served Petitioner with a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner was later transferred to the Desert View Annex in Adelanto, California, where he remains today. During his time in custody, Petitioner has not been afforded a bond hearing or any other meaningful opportunity to argue that he should not be detained. *Id.*

Petitioner filed the instant habeas petition on May 29, 2026. Dkt. 1. Petitioner alleges that his re-detention violates: (1) procedural due process; (2) substantive due process; (3) the Immigration and Nationality Act; (4) the Administrative Procedures Act; and (5) the Fourth Amendment. *Id*. at 14-21. Petitioner requests that the Court order his immediate release and prevent his detention "absent constitutionally adequate procedures and lawful statutory authority." *Id*. at 22.

On June 5, 2026, Respondents filed an Answer in which they state that they "are not presenting an opposition argument." Dkt. 7 at 2. Respondents further state: "Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter." *Id*. The same day, Petitioner filed a reply in which he urged the Court to order his immediate release. Dkt. 8.

## II.   DISCUSSION

Petitioner Singh argues that his re-detention violates procedural and substantive due process, the Immigration and Nationality Act, the Administrative Procedures Act, and the Fourth Amendment. In light of Respondents' statement they are not presenting an opposition, the Court concludes that Petitioner is entitled to habeas relief on his due process claims.

**A. Petitioner's Re-Detention Violates Procedural Due Process.**

Petitioner argues that procedural due process principles prohibit the Government from re-detaining him without adequate pre-deprivation process.

In numerous recent decisions, courts in this District—including the undersigned Magistrate Judge—have found that immigration authorities violated or likely violated due process by re-detaining noncitizens who had

4

been released shortly after their entry to the United States without notice or an opportunity to be heard. *See Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

### 1. Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his settled life out of custody. Petitioner has resided in the United States for nearly three years, during which time he was granted a work permit and developed substantial family and community ties. Dkt. 1 at 6-7. While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't,*

864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

While Petitioner has only resided in the United States for approximately three years, a person can develop meaningful ties in such a relatively short period of time. Petitioner may have "a lesser liberty interest" "at the margin" than other noncitizens released pending removal proceedings, but "the same important interest is at stake—freedom from prolonged detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

The Court therefore concludes that—consistent with decisions from this District and others—the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, No. 5:25-cv-02879, Dkt. 12 at 6; *Yataco*, 2025 WL 4065463, at *1; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernandez Lopez v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*,

6

No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

## 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7. The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis,* 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on his own recognizance pursuant to Section 1226(a). Petitioner's release reflects the Government's determination that Petitioner did not present a sufficient danger or flight risk requiring his detention. *See* 8 C.F.R. § 236.1(c)(8) (providing that the Government may release a noncitizen under Section 1226 "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").

Since his release in 2022, Petitioner has not given any reason to think

that the Government's determination was in error. He has complied with his conditions of supervision and maintained a stable life in the United States. He has had no criminal arrests or convictions during his time in the United States. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### 3. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews,* 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention

of Petitioner without adequate pre-deprivation process violated due process.

### B. Petitioner's Re-Detention Violates Substantive Due Process

Petitioner also argues that his re-detention violates substantive due process because it "bears no reasonable relationship to any legitimate government objective." Dkt. 1 at 17.

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process therefore requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Id.* (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). *See also Hernandez*, 872 F.3d at 981 ("the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"). As discussed above, the Supreme Court has recognized only two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal, and preventing danger to the community. *Id.* at 690-92.

Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. The statute provides that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When a person is apprehended under Section 1226(a), ICE officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Under

9

the regulations, the ICE officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.*

After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

For individuals like Petitioner who were released under authority of Section 1226, the statute provides that the Government "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). However, the BIA has recognized a limitation on the Government's authority to re-detain, indicating that "no change should be made by [DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). The Government has represented that, pursuant to this practice, "DHS generally only re-arrests an alien pursuant to § 1226(b) after a material change in circumstances." *Id.* (quoting Government brief). *See also Panosyan*

*v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *Matter of Sugay* and recognizing that "absent changed circumstances, such as reinvolvement with the criminal justice system, ICE cannot redetain Panosyan") (internal citations and quotations omitted).[1]

While this rule was adopted as a matter of agency practice, its grounding is constitutional. Where the Government previously determined that a noncitizen's detention is not necessary, it follows that re-detention is only justified if there has been some change in circumstances demonstrating that the noncitizen now presents a risk of danger or flight requiring detention. The rule ensures that detention bears a "reasonable relation" to a legitimate purpose and protects against the arbitrary deprivation of a noncitizen's liberty. *See Zadvydas*, 533 U.S. at 690. *See also Safi v. Noem*, No. 2:26-CV-00308-TLF, 2026 WL 445564, at *3 (W.D. Wash. Feb. 17, 2026) ("This standard prevented arbitrary revocations and ensured that detention decisions rested on individualized assessments of changed circumstances rather than categorical assumptions.").

For this reason, numerous courts have recognized that due process requires that the Government may only re-detain a noncitizen based on a material change in circumstances. *Id.*; *Qazi v. Albarran*, 2025 No. 2:25-cv-02791-TLN-SCR, 2025 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being redetained except upon a showing of a material change in

---

[1] The Petition indicates that Respondents have taken the position that Petitioner is subject to detention under Section 1225(b) pursuant to *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025). However, Petitioner is a member of the *Bautista* class and subject to the final judgment in the case, which establishes that his detention is governed by Section 1226(a). *See Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

circumstances."); *Yan Lu v. Los Angeles Field Dir., et al.*, No. 5:26-CV-575-JAK-SP, 2026 WL 1455317, at \*3 (C.D. Cal. May 7, 2026); *Lesic v. LaRose*, No. 25-cv-2746-LL-BJW, 2025 WL 3158675, at \*2 (S.D. Cal. Nov. 12, 2025); *Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at \*2 (S.D. Cal. Nov. 10, 2025); *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2554572, at \*3 (N.D. Cal. June 4, 2018).

Here, Respondents do not respond to Petitioner's substantive due process claim or identify any material changed circumstance that justifies his re-detention. The undisputed record establishes that, at the time of his re-detention, Petitioner had not violated any conditions of release or engaged in any criminal activity, and his immigration application remained pending before USCIS. The Court therefore concludes that Petitioner's re-detention violated due process because there was no material change in circumstances to justify the revocation of his release.

### C. Petitioner's Remaining Claims

Because the Court concludes that Petitioner is entitled to release on procedural and substantive due process grounds, it declines to address his remaining claims. Nothing prevents Petitioner from raising these claims again in the future, should the Government re-detain Petitioner following the procedures set forth above.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's re-detention violated due process. Accordingly, the Court ORDERS the following: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Amanjot Singh's (A# 241-737-174) immediate

12

release and prohibiting his re-detention absent pre-deprivation notice and a hearing where the Government must show material changed circumstances justifying Petitioner's detention; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: June 5, 2026

_____

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

13